F. BURKHART MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5294. Promulgated January 13, 1928.

*Abraham Lowenhaupt, Esq.*, for the petitioner.
*Henry Ravenel, Esq.*, for the respondent.

## OPINION.

LITTLETON: The question here at issue is the extent to which the petitioner is entitled to an amortization allowance under the provisions of section 234 (a) (8), Revenue Act of 1918, on certain buildings constructed during 1918 and 1919 for the production of articles contributing to the prosecution of the war. When the Commissioner made an examination of petitioner's claim in 1923, he found that the buildings in question were being used to their full capacity in the petitioner's regular business and disallowed the entire claim in so far as it related to the buildings, on the ground that their value to the petitioner in its business precluded such an allowance. The petitioner

admits that the buildings were in full use at the time of the respondent's investigation and that they were then necessary in its regular business, but contends that neither the cost of reproduction nor their value in use subsequent to the war has any bearing upon the amortization deduction. The position of the petitioner is that the amount of the amortization deduction is either (1) the cost of the facilities or (2) the cost of the facilities less what they would have cost in normal times preceding the war.

The argument advanced by the petitioner in support of a deduction of the entire cost during the period of war operation is that Congress enacted the amortization provisions for the purpose of permitting taxpayers who made expenditures on account of war facilities to write off the entire cost against war operations and thus exempt their profits from tax to that extent, regardless of the value of the property at the close of the war or the use made of it thereafter. In other words, that this allowance was intended in the nature of a bonus granted to persons engaged in war activities; that not only was the taxpayer to be saved from any losses suffered because he could not make full use of the facility after the close of the war, but also was to be placed in a position where such part of the assets which remained of value to him after the war would effectually be extinguished or wiped off his books as a deduction against war income. This, the petitioner says, necessarily follows from the definition of the word "amortize" which Webster's Dictionary defines as meaning: "To extinguish; to make as if dead; destroy; to clear off, liquidate, or otherwise extinguish, as a debt, usually by a sinking fund." That is to say, a reasonable allowance for amortization could only be one which would deaden or extinguish the entire cost.

The foregoing construction of the part of the statute here in question is not only contrary to decisions of this Board, but also is inconsistent with the amortization section, as we understand it, when taken as a whole. In one of the first cases involving an amortization allowance which came before the Board, *Appeal of Banna Manufacturing Co.*, 1 B. T. A. 1037, we said:

Taxpayers who produced articles contributing to the prosecution of the late war and who, on or after April 6, 1917, erected, installed or acquired buildings, machinery, equipment or other facilities for that purpose, are entitled to deduct from gross income, under section 234 (a) (8) of the Revenue Act of 1918, the difference between the cost of such buildings, machinery and equipment, and their actual sale price or fair market value when discarded, with proper allowance for depreciation while used, or, if they are still in use, their value to the taxpayer in terms of their use or employment in its going business.

This was followed by other decisions in which the Board stated that the purpose of the amortization allowance was to permit a deduction against war profits of extraordinary expenditures for prop-

erty for war purposes which the taxpayer would find useless upon the termination of the war. In the *Appeal of Walcott Lathe Co.*, 2 B. T. A. 1231, the Board said:

The purpose of the high rates was, in effect, to confiscate so-called war profits and to prevent the making of extortionate profits from the war, but it was recognized that in many cases facilities had been provided for the production of articles for war use which would be useless, or nearly so, upon the termination of hostilities. Manifestly, the cost of such facilities could not be regarded as recoverable over a long life of wear and tear, but could be regarded as recoverable only against the articles which that capital was invested to produce. In other words, the extraordinary investment on account of war facilities was properly recoverable out of war profits, and Congress in sections 214 (a) (9) and 234 (a) (8) so provided.

In the same opinion, it was further stated:

Reverting also to the purpose of the amortization provisions, it is clear that Congress intended that taxpayers should be permitted to eliminate from their capital accounts as an expense of producing war articles the cost of the capital assets provided for that purpose which became useless thereafter.

That the Board has not departed from the foregoing conception of the amortization provision is shown by the following statement from the recent opinion in *John Polachek*, 8 B. T. A. 1:

The amortization deduction, so far as can be ascertained from the meager legislative history open for our consideration, was enacted not because it was believed an essential factor in the determination of income, but rather because it was believed to be a fair, even though extraordinary, method of reducing tax. It is plain that income is not normally affected by an inflated capital cost, whether attributable to war or otherwise. Section 215 (b) expressly prohibits the deduction of such capital outlay. Normally such capital investment is kept unimpaired by taking from net income annually, through allowance for exhaustion, wear and tear and obsolescence, an amount sufficient to aggregate its cost at the end of its life. As to the war facilities, however, the taxpayer who had invested extensively was permitted something greater than this in an effort to relieve him from an unbalanced investment incurred during the war and beyond his peacetime needs. As said in *Walcott Lathe Co., supra.*, this extraordinary deduction was actuated by a purpose to afford relief from the high taxes of the war period and was in its nature something different from the usual depreciation deduction.

And further in the same opinion, the Board stated with respect to the meaning of the word "amortize," as follows:

Some point is made that the word "amortize" itself connotes a period of years, which is inconsistent with the application of the deduction to a single year. The word is not so definitive, and, since the broad terms of the statute necessarily require interpretation, the word must be applied in consonance with the statutory intendment as we understand it. So long as there are cases where the period of war production, war income, or other war circumstances, extends beyond 1918 (cf. *Standifer Construction Corporation, supra*), so that the deduction may be spread, the word fits the purpose. The petitioner's contention would require that in no case could the deduction be confined to a single year, a view which, as we have seen, would more often defeat the

statutory deduction than afford the intended relief. The word is sufficiently adapted to the remedy provided so that it may apply, as the statute says, to "the year or years affected." A reasonable deduction may, under the circumstances of each case, be either spread over a period or confined to a single year. The facts here indicate no reason for a spread.

In view of the foregoing, there could hardly be any question that the interpretation previously given by the Board to the amortization provisions is opposed to the first proposition advanced by the petitioner. The Board is also of the opinion that the arguments advanced by the petitioner fail to take full cognizance of the intent indicated by statements made in Congress when this war measure was being enacted. While such discussions are not controlling as showing the meaning of a given act, they at least are helpful in seeking to determine the underlying purpose. Mr. Kitchin, Chairman of the Ways and Means Committee, on September 3, 1918, in making the report to the House on the Revenue Act of 1918, made the following comment with respect to the amortization provision (65th Cong., 2d sess., H. Rept. No. 767):

(4) Due to the necessity for erecting buildings and building machinery for war purposes many buildings and much machinery have been erected that will be of little value after the war. Under existing law it is impossible for the Treasury Department to allow deductions other than for the ordinary exhaustion, wear and tear, and depletion of such property. A provision is incorporated in this bill to allow the Treasury Department in such cases to allow special amounts for amortization, according to the peculiar condition in each case, but such amounts can not exceed in any year 25 per cent of the net income. At any time within three years the allowance may be reexamined, and if found incorrect the taxes will be readjusted, and any overpayment refunded or any underpayment collected from the taxpayer.

With some minor changes, the same provision came up for consideration before the Senate when, during the discussion, the following statement was made (Congressional Record, February 17, 1919):

If by reason of the investment of his profits in an extension of his yards, the shipowner has constructed a plant which was necessary in time of war to meet the demands which were made upon him at that time for production, but which after the termination of the war has depreciated in value because not needed; in that case under the amortization provisions he will be allowed to amortize to the full extent of the depreciation in value.

In each instance the understanding appears to have been that some form of relief was being considered on account of expenditures which were made for war facilities which would be of no value upon the termination of the war or at least would have much less value in the business because unsuited to a given taxpayer's peace-time needs. As we said in *John Polachek*, *supra*, "The statute was designed to give relief and not to confer bounty." This same fact is further indicated by the provision for a later examination of the

petitioner's return for the purpose of determining as a result of an "appraisal or from other evidence" the correctness of the allowance previously made. If the total costs are to be allowed as deductions during the war year, we fail to see why it should be necessary to resort to an appraisal in order to determine the allowance. Webster's Dictionary defines an "appraisal" as an "Act of appraising; appraisement; valuation; estimate," and Bouvier's Law Dictionary, vol. 1, p. 217, gives the meaning of the word "appraise" as "To value property at what it is worth." It certainly would be unusual to value subsequent to the war period to determine how much had been expended therefor, though an "appraisal" of property does have a definite meaning in the statute when considered with respect to a determination of the postwar value of property which a taxpayer had theretofore acquired for war work.

In view of the foregoing, the Board is of the opinion that the construction of section 234 (a) (8), Revenue Act of 1918, contended for by the petitioner, which would grant to it an amortization allowance of the total costs of war facilities regardless of their subsequent use or value to him, must be denied.

Secondly the petitioner concedes that although some of the discussion in Congress, while the provision here in question was being considered, may be opposed to the proposition heretofore disposed of, it contends that neither such discussion nor the Act itself is opposed to the alternative position taken, namely, that the amortization allowance is the excess of cost of the war facilities over normal cost, meaning by "normal cost," costs as prevailing during 1911, 1912, and 1913, rather than costs prevailing during the postwar period from the termination of the war to March 3, 1924.

The question concerning the proper allowance for amortization of facilities purchased for the production of articles contributing to the prosecution of the war, but which had some value to the taxpayer upon the termination of the war because they were continued in use in its business, has been before the Board on other occasions and then decided in a manner contrary to the construction contended for by the petitioner. While in the many cases heretofore considered, an alternative to the views which we have already expressed may not have been advanced by one of the several prior petitioners on this subject in the manner now advanced by the present petitioner, at any event, it became necessary in those cases to determine the amount of the deduction to which the petitioner was entitled, which included a decision as to the factors entering into such a determination. In *Standard Refractories Co.*, 6 B. T. A. 24, in which many of the prior decisions bearing on the question here in issue were quoted with approval (*Banna Manufacturing Co.*, *supra; Kirk*

*Coal Co.,* 3 B. T. A. 755; *Greenville Coal Co.,* 3 B. T. A. 1323; and *Manville Jenckes Co.,* 4 B. T. A. 765), the petitioner contended, among other things, for a deduction upon the basis of a comparison of the physical use during the postwar period with the physical use during the war period. In denying an allowance on this ground alone, the Board said:

Undoubtedly this is a factor which should be considered in determining what amount should be allowed as a reasonable deduction for amortization, but at best it is but one of the several factors. *The cost of replacement during the postwar period,* of the same or other facilities which would produce the same results; any improvements or radical changes in the facilities; the salvage value of such facilities; their selling price if they have been sold; *a proper discount for excess facilities* which may be used because they are on hand but which in the ordinary conduct of the business would have been acquired only in the future; and all other similar factors, depending upon the facts in the particular case, must be considered in determining the amount of the deduction. (Italics supplied.)

A positive statement from the Board as to the period to be considered in determining the extent to which a taxpayer has suffered by reason of an acquisition of a facility for war purpose and use of the same facility in peace-time operations is found in *Manville Jenckes Co., supra,* in which, after reviewing the pertinent provisions of the Revenue Act of 1918 and the changes made therein by the Revenue Act of 1921, the following definition of such period is given:

It would seem clear from the above-quoted provisions of the Revenue Act of 1921 that Congress, by implication at least, has fixed the termination of the postwar period in every case as March 3, 1924, and that it intended that the determination of the amortization deduction should be made in the light of all the conditions and circumstances surrounding a taxpayer's business during the period intervening between the date of the termination of the war and March 3, 1924. Doubtless Congress realized that for the purposes of proper administration of the amortization provisions of the statute a line would have to be drawn somewhere; and we have no doubt that it intended that the circumstances peculiar to each taxpayer's business during a definitely stated period, a period which would be the same in all cases, should be a determinative factor.

From the foregoing decisions made on this subject, the Board has certainly decided that the useful value of the property to the petitioner in its business must be considered in determining the amortization allowance on facilities which were continued in use after the termination of the war, and that such value must be predicated upon conditions and circumstances prevailing between the close of the war and March 3, 1924. We are of the opinion that an amortization allowance determined in this manner follows both the letter and spirit of the statute and gives to a taxpayer the reasonable deduction contemplated. To follow petitioner's theory would make it necessary to determine the allowance by a comparison of prewar prices with war costs without regard to the extent to which a given facility is used

after the war; that is, it leaves out of account excess facilities which may be retained by the taxpayer either for part-time or emergency operations. Of course, in this particular case where the facilities were being used 100 per cent, it would be advantageous to petitioner to have the deduction determined on its theory, but there are many cases where this would not be true. When a taxpayer is allowed a deduction from war profits for expenditures made for war purposes, but which had a lowered value to him in peace-time operations, substantial relief is being granted; but when a deduction is permitted on the petitioner's contention, what amounts to a bonus is being meted out.

In disposing of the first contention advanced by the petitioner, we referred to the provision in the statute for a reexamination of a taxpayer's claim when, " as a result of an appraisal or from other evidence," the correctness of the allowance previously granted might be determined. Again, we are of the opinion that the language here used evidences an intent on the part of Congress that all factors which would enter into such a determination must be considered; not only those which existed when the return was filed, but also those which may become known by the end of the postwar period, which we have held to be March 3, 1924. If, as this petitioner contends, we are to consider only prewar prices as compared with war cost, it would hardly be necessary to resort to an appraisal for that purpose, for at least such prices would be as capable of determination at the time of filing the return or making the first examination as at some later time. We are of the opinion that when Congress referred to a reexamination of the return, it could only have had in mind a redetermination based upon postwar prices, conditions and circumstances which were changing in such a manner during the postwar period as to affect the measure of relief to be granted and not a redetermination based upon factors which were fixed at the termination of the war.

The foregoing does not mean that a determination of the amortization allowance based on value of the property to petitioner in its business is to be predicated only on the extent to which the facilities are used, the basis apparently followed by the respondent's engineer who examined this claim, but all factors are to be considered which are indicative of an unbalanced investment made during a time of war prices for facilities which are being used in whole or in part in peace-time operations. This conception of the measure of relief to be granted is supported by *Elliott* v. *United States*, 16 Fed. (2d) 164. In the instant case we must sustain the determination as made by the respondent for the reason that insufficient evidence has been presented by the petitioner which would justify us to overturn it.

*Judgment will be entered for the respondent.*